# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re: ) | |
| ) | Bankruptcy Case |
| ADAM HARRISON BRYANT, ) | No. 19-00292-ELG |
| ) | Chapter 7 |
| Debtor. ) | |
| _____) | |
| ) | |
| ADAM HARRISON BRYANT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adv. Pro. No. 19-10012-ELG |
| ) | |
| EDUCATIONAL CREDIT MANAGEMENT ) | |
| CORP., ) | |
| ) | |
| Defendant. ) | |

## MOTION FOR SUMMARY JUDGMENT

Plaintiff Adam Harrison Bryant ("**Plaintiff**" or "**Debtor**"), by and through undersigned counsel, hereby files this Motion for Summary Judgment ("**Motion**")[1] pursuant to Federal Rule of Civil Procedure 56, as effectuated by Federal Rule of Bankruptcy Procedure 7056, and Local Rule 9013-1, as there is no genuine issue of material fact between the parties and Plaintiff is entitled to judgment as a matter of law.

---

[1] In accordance with Local Rule 9013-1(b)(2), the Debtor is combining his memorandum of points and authorities with this Motion.

H. Jason Gold, DC Bar No. 490595
David M. Barnes, Jr., DC Bar No. 1600347
NELSON MULLINS RILEY & SCARBOROUGH LLP
101 Constitution Avenue, NW, Suite 900
Washington, DC 20001
Telephone: (202) 689-2800
Email: jason.gold@nelsonmullins.com
       david.barnes@nelsonmullins.com

*Counsel to the Debtor*

## PRELIMINARY STATEMENT

Over 12 years ago, Adam Bryant, the Plaintiff, admitted to the commission of a very serious crime.[2] After serving 40 months in prison, he attempted to restart his life and become gainfully employed in a field suitable to his education and training. Unfortunately, due to the general nature of his offense, it quickly became clear that it was impossible for him to reestablish his career. The Debtor's case is therefore an unusual one – he is seeking a discharge of the very debts (the student loans) he incurred to launch a career that can never be realized. This is an important distinction from the typically vilified college or post-graduate student that Congress sought to prevent from abusing the broad bankruptcy discharge when the student loan exception to discharge was enacted in 1978. Indeed, upon examination of the facts, it is clear that the Debtor's circumstances meet the Bankruptcy Code's "undue hardship" requirement. He is and has been an honest, hardworking individual struggling to make ends meet and remain current on his student loan payments. But because he is a registered sex offender, his employment opportunities are virtually non-existent in any field that would pay anything more than a nominal wage. As discussed herein, Plaintiff has acted in good faith by minimizing his expenses and making payments on his student loans whenever possible, but his felony conviction as a sex offender, which will continue to follow him for the rest of his life, perpetuate his inability to repay the loan. The record and facts set forth by the Motion and Plaintiff's Affidavit in support thereof attached as *Exhibit A* ("**Bryant Affidavit**") establish that Plaintiff would suffer an "undue hardship" under section 523(a)(8) of the Bankruptcy Code absent a discharge.

---

[2] In March 2008, Debtor was arrested during a sting operation for traveling from Washington, D.C. to Arlington, Virginia to meet with an undercover agent posing as a teenager whom he met online. He pled guilty under 18 U.S.C. § 2423(b) and 22 D.C.C. § 3010(b).

Thus, Plaintiff's Motion should be granted and judgment should be entered discharging his student loan.

**STATEMENT OF UNDISPUTED MATERIAL FACTS**

1. On May 1, 2019, Plaintiff filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code and immediately thereafter initiated the instant adversary proceeding to discharge his student loans under 11 U.S.C. § 523(a)(8). (*In re Bryant*, Case No. 19-00292-ELG; *Bryant v. Educ. Credit Mgmt. Corp.*, Adv. Pro. 19-10012-ELG.)

2. Defendant Educational Credit Management Corporation ("**Defendant**" or "**ECMC**") is the successor guarantor and present holder of a consolidated student loan disbursed to Plaintiff in 2004 with an outstanding principal balance of approximately $76,649.65 ("**Loan**"). (Joint Pretrial Statement, *Exhibit B*, ¶¶ 3-9.)

**I.    Criminal Conviction and Supervised Release.**

3. On or about March 26, 2008, Plaintiff was arrested for the commission of a felony. Plaintiff pled guilty in July 2008 to a felony in the U.S. District Court for the District of Columbia and was incarcerated for 40 months. (*United States v. Bryant*, Case No. 1:08-cr-00170-RCL, ECF No. 25 (D.D.C. Oct. 25, 2008))

4. At the time of Plaintiff's arrest, he was an attorney licensed to practice law in the Commonwealth of Virginia and was working as a Senior Associate in the Forensic Practice at KPMG LLP. (Bryant Aff., ¶ 6.)

5. After Plaintiff's sentencing, the Virginia State Bar revoked his license to practice law. (*Id.* at ¶ 11.)

6. In February 2011, Plaintiff was released under the supervision of the U.S. Probation Office ("**Probation Office**") for the District of Columbia. Upon release, Plaintiff was required to, among other things, register as a convicted sex offender. (*Id.* at ¶ 13.)

7. Plaintiff's supervised release terminated February 18, 2021, and he plans to relocate to San Diego in May 2021. (*Id.* at ¶ 14.)

II. **Loan Payment History.**

8. Prior to March 2008, Plaintiff was making timely payments on the Loan. (*Id.* at ¶ 15; Joint Pretrial Statement, ¶ 11.)

9. While Plaintiff was incarcerated, he notified his student loan lender of his situation and requested that his debt be placed in forbearance, which was eventually approved. (Bryant Aff., ¶_17.)

10. Upon release from incarceration, Plaintiff entered into a new payment plan and began making regular and timely payments. (*Id.* at ¶¶ 18-19.)

11. Plaintiff attempted to transfer his supervised release to the Western District of Texas to be closer to his family and support network, but the Probation Office imposed restrictions and special requirements that precluded Plaintiff from relocating. (*Id.* at ¶¶ 21-23.)

12. Plaintiff instead lived in College Park, Maryland after his release from incarceration and began working two jobs as a valet attendant parking cars to subsist. (*Id.* at ¶¶ 24-25.)

13. In September 2014, due to a new policy change by the Probation Office for the District of Columbia requiring offenders under their supervision to reside within the city limits, Plaintiff was forced to relocate into D.C., thereby doubling his living expenses due to the much higher cost of living. (*Id.* at ¶¶ 27-28.)

14. Plaintiff eventually qualified for and accepted an employment offer from the D.C. government with a salary sufficient to provide a reasonable standard of living for himself. (*Id.* at ¶ 29.)

15. However, after only a few months at this position, he was terminated because of media attention that a registered sex offender had been hired by and was working for the city.[3] (*Id.* at ¶ 30.)

16. After four months of looking for another job, Plaintiff was offered a position at a quasi-governmental agency in Maryland. Although Plaintiff' honestly disclosed his status as a registered sex offender, he nevertheless resigned after being given the option to either resign or be terminated immediately. (*Id.* at ¶ 31.)

17. Plaintiff currently owns his own consulting practice and is also an independent contractor working on a commission-basis selling software. At this position, it took Plaintiff five months to close his first sale (at which point he was earning $94 per month), and it was not until after the Petition Date that he closed his second sale (then earning about $750 per month). (*Id.* at ¶¶ 32-33.)

18. Although Plaintiff has limited and unreliable sources of other income, the work he does is temporary and could terminate at any time. (*Id.* at ¶ 34.)

## LEGAL STANDARD

### I. Summary Judgment Standard.

Under Rule 56 of the Federal Rules of Civil Procedure, a court will grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and

---

[3] The incongruous position of the two agencies of the local government should be noted: on the one hand he was required to *live* in the city, but on the other hand he was prevented from *working* in the city at a wage sufficient to allow him to live in the city.

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

## II. Dischargeability of Student Loans under 11 U.S.C. § 523(a)(8).

The Bankruptcy Code provides that government-issued student loan debt can be discharged only if a debtor can show that the failure to discharge the debt would impose an "undue hardship" on the debtor. 11 U.S.C. § 523(a)(8). The term "undue hardship," however, is not defined in the Bankruptcy Code. Courts have found that in enacting section 523(a)(8) of the Bankruptcy Code, Congress attempted to create a heightened dischargeability standard through the use of the term "undue" that requires more than the general hardships found in most bankruptcy cases. *Educational Credit Management Corp. v. Frushour*, 433 F.3d 393, 399 (4th Cir. 2005). The heightened standard was created in response to a "rising incidence of consumer bankruptcies of former students motivated primarily to avoid payment of educational loan debts." *In re Brunner*, 46 B.R. 752, 754 (S.D.N.Y. 1985).

The *Brunner* test promulgated by the Second Circuit has emerged as the majority approach for determining whether an undue hardship exists. *Brunner v. New York State Higher Educ. Servs. Corp.*, 831 F.2d 395 (2d Cir. 1987). To establish an undue hardship, the *Brunner* standard requires that a debtor establish

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

6

*Id.* at 396. The debtor carries the burden of establishing all three of the *Brunner* prongs by a preponderance of the evidence. *Frushour*, 433 F.3d at 400.

This Court has adopted a modified version of the *Brunner* test with certain qualifications. First, "*Brunner* is not an all-or-nothing proposition. If the debtor will have the ability to pay part of the debt in the future, applying the Brunner test to that part of the debt ought to make it nondischargeable." *In re Zook*, Case No. 05-00083, Adv. Proc. No. 05-10019, 2009 WL 512436, at *2 (Bankr. D.D.C. Feb. 27, 2009). Second, "if the debtor is currently unable to pay the debt and the *Brunner* test is otherwise met except that the debtor has shown a future inability to pay for only a finite period, the debt ought to be dischargeable during that finite period." *Id.* Finally, "limiting the forecast of the debtor's inability to pay to 'a significant portion of the repayment period of the student loans,' as mandated by *Brunner*, is obsolete." *Id.*

*Brunner* has received criticism for creating too high of a burden for most bankruptcy petitioners to meet. *Brunner's* fact intensive analysis allows for significant judicial interpretation and speculation, which has led to an unachievable standard. These harsh results often associated with *Brunner* are the byproduct of courts interpreting the standard with unflinching rigidity. Indeed, "[o]ver the past 32 years, many cases have pinned on *Brunner* punitive standards that are not contained therein. Those retributive dicta were then applied and reapplied so frequently in the context of *Brunner* that they have subsumed the actual language of the *Brunner* test." *In re Rosenberg*, 610 B.R. 454, 458-59 (Bankr. S.D.N.Y. 2020) (citations omitted); *see also Krieger v. Educ. Credit Mgmt. Corp.*, 713 F.3d 882, 884 (7th Cir. 2013) (cautioning that certain prongs of *Brunner* could be considered "judicial glosses" in danger of superseding the statutory language itself). In fact, some courts have even considered a debtor's attempt to discharge their student loan debt as evidence of bad faith. *See In re D'Ettore*, 106 B.R. 715, 719 (Bankr. M.D. Fla.

1989) (dismissing debtor's complaint where student loans constituted 82% of debtor's total debts); *In re Holzer*, 33 B.R. 627, 632 (Bankr. S.D.N.Y. 1983) (good faith prong not satisfied where student loans were only debts listed in debtor's schedules).

Accordingly, it is important to apply the *Brunner* test as it was originally intended and "not participate in perpetuating these myths." *Rosenberg*, 610 B.R. at 459.

## ARGUMENT

### I. Plaintiff Cannot Maintain a Standard of Living if He Is Required to Make Payments on His Student Loan.

The first *Brunner* inquiry is whether the debtor currently lacks the financial means and ability to repay the education debt while maintaining a minimal standard of living. *Brunner*, 831 F.2d at 396. This inquiry "requires consideration of the amount of the debtor's education loan payments; the debtor's current income; and household, medical, and other expenses, and the reasonableness of those expenses." *Zook*, 2009 WL 512436, at *4. Debtors are not expected to live in poverty to satisfy this prong but neither are they excused from making personal and/or financial sacrifices in order to repay the debt. "[A] minimal standard of living is a measure of comfort, supported by a level of income, sufficient to pay the costs of specific items recognized by both subjective and objective criteria as basic necessities." *Id.* at *4.

Plaintiff's schedules reflect his inability to cover his living expenses without contributions from his family. On Schedule I, Plaintiff listed monthly income of $94.00, plus $2,594.00 in "family gifts" used to pay rent, food, and utility bills. On Schedule J, Plaintiff listed his monthly net income at $0.00. Since the Petition Date, Plaintiff's monthly net income has continued to vary drastically. Attached as *Exhibit C* is a chart reflecting Plaintiff's personal income and expenses from 2019 and 2020. Below is a chart summarizing Plaintiff's average monthly income, financial contributions from his family, and expenses.

|  | **2019** | **2020**[4] |
|---|---|---|
| **Income** | $3,297.74 | $8,420.98 |
| **Family Contributions/Other** | $984.25 | $2,000.00 |
| **Expenses** | $3,663.26 | $8,624.19 |
| **Net Income** | $618.74 | $1,796.78 |

Plaintiff's current monthly payment on the Loan is $0.00 but will increase after the temporary COVID-related suspension of student loan payments is lifted. While Plaintiff is currently receiving somewhat more income and support at this time, the evidence demonstrates that such income is an aberration in light of Plaintiff's employment history and is not guaranteed to continue for the foreseeable future. Plaintiff's earnings history demonstrates that but for his family's financial contributions, he would have been unable to support himself since his release from incarceration. For example, in 2019, Plaintiff's average monthly income was $3,297.74, which included $984.25 in average monthly contributions from his family. Had Plaintiff not received help from his family, he would have not been able to meet his average monthly expenses of $3,663.26. In 2020, Plaintiff was able to make ends meet due in large part to a $20,000.00 inheritance from his father's death in August 2019 – however, all but approximately $2,200.00 was used to pay the remaining amount of rent due under his lease. Furthermore, in 2020, a portion of his income was derived from loans with the Small Business Administration and Paycheck Protection Program.[5]

Plaintiff is unable to maintain a minimal standard of living while making regular payments on his loan and therefore has satisfied the first *Brunner* prong.

---

[4] Through October 31, 2020.

[5] Plaintiff applied for and received a loan totaling $9,300 through the Coronavirus Aid, Relief, and Economic Security (CARES) Act. Plaintiff intends to apply for and receive full loan forgiveness in 2021.

## II. Plaintiff's Felony Conviction and Status as a Registered Sex Offender Are Additional Circumstances That Will Continue to Impact His Ability to Repay the Student Loan.

The next inquiry is whether there are any additional circumstances that indicate the debtor will not be able to make loan payments in the foreseeable future. *Brunner*, 831 F.2d at 396. This inquiry "requires consideration of any additional circumstances which will persist, or are likely to arise, which would prevent the debtor from securing adequate shelter, nutrition, health care, and similar necessities." *Zook*, 2009 WL 512436, at *10.

Plaintiff's prior conviction and continued status as a registered sex offender are additional circumstances that are not only *likely* to persist but *will* persist for a significant portion of the Loan's repayment period. Plaintiff's conviction as a sex offender means that he is required to disclose that fact for the rest of his life. This requirement has already limited his ability to obtain and to maintain employment with regular income. As discussed thoroughly in Plaintiff's Affidavit, despite having a law degree, Plaintiff has struggled to find steady employment and housing because of his status as a sex offender. Plaintiff's flow of income is comprised almost entirely of temporary, independent contracting jobs. The last time he worked in a full-time capacity was in November 2017 with the Washington Suburban Sanitary Commission.

Although his probation has ended, his record will be forever marred by his conviction as a sex offender. Such circumstances will persist throughout the foreseeable future and the remaining repayment period on the Loan, thereby satisfying the second prong of the *Brunner* test.

## III. Plaintiff Has Made a Good Faith Effort to Repay His Student Loan.

The final inquiry is whether Debtor has, in good faith, attempted to repay the loan. *Brunner*, 831 F.2d at 396. The debtor "must show he or she has made reasonable efforts to

maximize income and minimize expenses in order to repay the loan." *Zook*, 2009 WL 512436, at *11. As this Court has previously discussed, "the good faith portion of the *Brunner* test should consider whether the debtor is acting in good faith in seeking the discharge, or whether he is intentionally creating his hardship." *Zook*, 2009 WL 512436, at *1 (quoting *Credit Mgmt. Corp. v. Polleys*, 356 F.3d 1302, 1309 (10th Cir. 2004)). The Court may also consider "whether the debtor has tried to make some payments when he or she could, or has sought to defer the loan or renegotiate the repayment plan." *Id.* at *11.

As discussed herein and in Plaintiff's Affidavit, Plaintiff has demonstrated his good faith efforts to repay the Loan. Prior to his incarceration in 2008, he consistently made payments on the Loan. Once incarcerated, he promptly notified the Loan holder and had his Loan placed into forbearance. Likewise, upon release from incarceration in 2011, Plaintiff entered into a new payment plan under the Loan and restarted making his monthly payments. Plaintiff has consistently remained current on his Loan payments.

Not only did Plaintiff seek forbearance and hardship deferments during his incarceration and establish a new payment plan upon his release so that he could continue making payments on the Loan, but Plaintiff has also been diligent about reducing living expenses and looking for employment. While incarcerated, Plaintiff worked with his case worker to transfer his supervised release to the U.S. Probation Office for the Western District of Texas, where he would be able to live close to and rely on his family while navigating the process of reentering society. However, despite the fervent support and aid from his family (including his father taking out a second mortgage to purchase a nearby "fixer-upper" that Plaintiff could live in and work on throughout the years), the Probation Office would not approve any of his residential choices. Furthermore, in September 2014, the Probation Office instituted a new regulation

11

requiring Plaintiff to move from College Park, Maryland, where he was paying $700.00 per month, to D.C., where his monthly rent more than doubled and his expenses increased significantly.

Further, Plaintiff has made good faith efforts to find employment and repay the Loan when possible. Upon his release, Plaintiff held two positions as a valet attendant in D.C., working more than 70 hours a week just to make ends meet. Plaintiff's valet positions led to an opportunity for a quasi-professional position within the valet company – however, the company told Plaintiff that given his conviction they would only be able to hire him as an independent contractor. Plaintiff therefore did not receive the standard benefits and protections that come with employee status, adding further burden to his financial situation.

Even when Plaintiff has been fortunate enough to receive an employment offer, his status as a convicted sex offender inevitably lead to his termination. For example, when his position at the valet company ended, he was fortunate enough to receive an offer to work as a Management Analyst for the D.C. government. Once his status as a sex offender became known, however, he was terminated. He was also terminated from a quasi-governmental agency in Maryland after he voluntarily disclosed his status. After the agency conducted the background investigation, he requested a copy of the report and discovered that his conviction was not included because it had been more than 10 years prior. In the spirit of honesty and full disclosure, Plaintiff informed the agency's human resources department of his conviction. Almost immediately thereafter he was informed that he would be terminated if he did not immediately resign simply because of his background.

As a defense to Plaintiff's claim for relief, ECMC alleges, among other things, that any limitation on Bryant's employment options are of his own making and not due to any factor

beyond his reasonable control. *See* Joint Pretrial Statement (ECF No. 30), p. 5. However, this argument has already proven to be unsuccessful for ECMC. That is because it is precisely the type of "retributive dicta" that the *Rosenberg* court criticized. *See Rosenberg*, 610 B.R. at 461 ("Nor does the [*Brunner*] test require that the Court make a determination about whether the Petitioner's 'state of affairs' was created by 'choice' as ECMC suggests in its papers.").

Simply put, there is nothing indicating that Plaintiff is in any way attempting to avoid repayment of his Loan in bad faith.

## IV.  Conclusion.

Plaintiff has demonstrated that his federal conviction and registration as a sex offender make it nearly impossible for him to support himself with any degree of consistency and is therefore unable to maintain a minimal standard of living while repaying the Loan. His inability to repay the Loan is the result of factors outside of his control, specifically the stigma against felons and registered sex offenders. He has made good faith efforts to repay the Loan, and the presence of additional circumstances warrant the discharge of its remaining balance.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests entry of an Order (i) granting the Motion, (ii) determining that excepting Plaintiff's student loan obligations from his discharge would result in an undue hardship pursuant to 11 U.S.C. § 523(a)(8); (iii) discharging any remaining balance due under the Loan; and (iv) granting such other and further relief as is just.

Respectfully submitted,

ADAM HARRISON BRYANT

By Counsel

NELSON MULLINS RILEY & SCARBOROUGH LLP
101 Constitution Avenue, NW, Suite 900
Washington, DC 20001
Tel: (202) 689-2800
Fax: (202) 689-2860
Email: jason.gold@nelsonmullins.com
david.barnes@nelsonmullins.com

By: /s/ David M. Barnes, Jr.
H. Jason Gold, DC Bar No. 490595
David M. Barnes, Jr., DC Bar No. 1600347

*Counsel to the Debtor*

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of March 2021, a copy of the foregoing Motion was sent by first class mail, postage prepaid, to:

Frank J. Mastro
Schlossberg Mastro & Scanlan
P.O. Box 2067
Hagerstown, MD 21742-2067

/s/ David M. Barnes, Jr.
David M. Barnes, Jr.